## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLAVANIA

| | | |
|---|---|---|
| DAVID BAZLEY, individually and on behalf of all others similarly situated, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | CLASS ACTION |
| | : | |
| v. | : | No. |
| | : | |
| ANTHEM, INC., d/b/a Anthem Health Inc., THE ANTHEM COMPANIES, INC., ANTHEM LIFE INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| *Defendants.* | : | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

David Bazley, on behalf of himself and all others similarly situated, by and through his attorneys, Caroselli Beachler McTiernan & Conboy, LLC, hereby sets forth the following allegations and claims against Anthem, Inc., d/b/a Anthem Health, Inc., and Anthem Blue Cross Life and Health Insurance Company (hereinafter "Anthem") arising from their massive breach and loss of protected health and personal identifying information.

## NATURE OF THE CLAIM

1.      This is a consumer class action brought on behalf of the Plaintiff and all others similarly situated against Anthem due to Anthem's failure to secure Plaintiffs' protected health and personal identifying information, including but not limited to social security numbers, full names, addresses, dates of birth, employment, and income information and corresponding loss of this information in a massive data breach disclosed by Anthem for the first time on February 4, 2015.

2.      As a health insurance provider Anthem had a duty to protect the personal and confidential information of its members and subscribers, and expressly promised through its

1

privacy policies to safeguard and protect its member's information in accordance with HIPPA regulations and industry standards.

3.      Anthem previously experienced a data breach in 2010.

4.      Despite suffering this earlier data breach, Anthem continued to store its current and former members protected health and personal identifying information in electronic databases that lacked crucial security measures and industry standard data protections.  Anthem's databases containing this protected information may not have been encrypted.

## PARTIES

5.      Plaintiff, David Bazley is an adult individual and citizen of the Commonwealth of Pennsylvania and resides in Georgetown, Beaver County, within this Federal District.

6.      Defendant, Anthem, Inc., d/b/a Anthem Health, Inc., is an Indiana corporation with a principal place of business located at 120 Monument Circle, Indianapolis, Indiana 46204.

7.      Defendant The Anthem Companies, Inc., is an Indiana corporation with a principal place of business located at 120 Monument Circle, Indianapolis, Indiana 46204 registered with the Pennsylvania Secretary of State to do business in Pennsylvania.

8.      Defendant Anthem Life Insurance Company, is an Indiana corporation with a principal place of business located at 120 Monument Circle, Indianapolis, Indiana 46204 that is licensed and registered as an insurer under the laws of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  In the aggregate, Plaintiff's claims and the claims of the members of the class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Defendants' state of citizenship which is Indiana.

10.    This Court has personal jurisdiction over Anthem because Anthem is authorized to do and does business in the Commonwealth of Pennsylvania.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in the District, Plaintiff resides in the District and because Anthem is subject to personal jurisdiction in this District.

## COMMON FACTUAL ALLEGATIONS

12.    Plaintiff has health insurance issued by Anthem and, as a result, Anthem required Plaintiff to provide his "Personally Identifiable Information" or "PII" and his "Protected Health Information" or "PHI" to Anthem.

13.    Anthem claims that on or about January 29, 2015, it detected a massive data breach that compromised the PII and/or PHI of approximately 80 million current and former customers.[1]

14.    News of the data breach was first published by the Wall Street Journal.

15.    In February 2015, Anthem confirmed that its computer network was the target of a very sophisticated external cyber attack [in which the] attackers gained unauthorized access to Anthem's IT system and obtained personal information [of its] current and former members such as their names, dates of birth, Social Security numbers, health care ID numbers, home addresses, email addresses, and employment information, including income data.[2]

16.    In a letter from its President and CEO, Joseph R. Swedish, Anthem stated that upon discovering the attack it immediately began notifying authorities and consumers that it

---

[1] *See* www.consumeraffairs.com/news/hackers-breach-anthem-health-insurance-database-up-to-80-million-records-exposed-020515.html last visited February 17, 2015.

[2] *See* www.anthemfacts.com last visited on February 17, 2015, a copy of which is attached hereto, made a part hereof and marked Exhibit "A."

would be providing appropriate notification to affected members and regulatory agencies as required by federal and state law.[3]

17.     Anthem has recently admitted that some of the customer data lost in the breach dates as far back as 2004.[4]

18.     The data breach at issue in this case occurred despite the fact that Anthem was on notice of its security deficiencies.  In 2012, Anthem settled a lawsuit brought by the Attorney General of California over a security breach that occurred when approximately 33,000 letters were sent to customers with the customers' social security numbers visible through the envelopes.  Anthem, as WellPoint, also agreed to pay $1.7 million to resolve federal allegations that it exposed the confidential health information of over 600,000 people.  Federal officials determined that Anthem's security safeguards were inadequate in an online application database, leaving confidential health information and PII accessible to being hacked.

19.     In an April 18, 2011 civil action Settlement Agreement relating to the 2010 security breach allowing public access to the medical records of over 600,000 customers, Anthem disclosed that:

> In February 2010, an individual who had submitted an application to WellPoint for health benefits coverage on behalf of her minor dependent informed the company that she believed Internet users could access the application that she has submitted as well as other applicants' confidential information on the WellPoint web servers by deleting characters at the end of the web address for WellPoint's customer interface website.

---

[3] *See* www.anthemfacts.com A Letter from our CEO, last visited on February 17, 2015, a copy of which is attached hereto, made a part hereof and marked Exhibit "B."

[4] *See* http://www.consumeraffairs.com/news/anthem-hackers-threaten-customer-records-dating-back-to-2004-021615.html?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+consumeraffairs%2FSXJd+%28ConsumerAffairs.Com+News+%26+Alerts%29

20.     As part of the Settlement Agreement, Anthem acknowledged that:

> [T]he username, password and encryption security protections were not transferred to the upgraded web servers and, as a result, the electronically stored personal identifying information and personal health information of WellPoint customers, enrollees or subscribers was unprotected by username, password and encryption from on or around October 23, 2009 through on or around March 20, 2010 ....

21.     Plaintiff and the class members had a reasonable expectation that their confidential health information and PII would remain private and confidential. *See* Exhibit "B" (letter of Joseph Swedish, Anthem President and CEO ("I want to personally apologize to each of you for what has happened **as I know you expect us to protect your information.**")(emphasis added).

22.     As a result of Anthem's deficient practices, Plaintiff and the class members have been damaged and have lost or are subject to losing money and property via identity theft as a result of Anthem's security failures.

23.     Anthem recognized and accepted this duty to protect its members PHI and PII as evidenced by Anthem's privacy policy and related links on its website where they acknowledge current and former members expectation that their personal information will be safeguarded and protected.

24.     Anthem's statements about its data security and management practices—both through its privacy policies and other public representations—served to falsely inflate the advertised utility of its services, thus allowing it and/or its affiliates to charge members higher costs for treatment. Specifically, Defendants represented that it would take affirmative and commercially reasonable measures to protect consumer's personal information and actively prevent disclosure and unauthorized access.

25.     Anthem did not control access to PHI and PII in a manner consistent with healthcare industry standards for the protection of sensitive information or with health industry regulations defined by the Health Insurance Portability and Accountability Act (HIPAA). HIPAA Security Rule mandates that all PHI is protected, that an unauthorized disclosure of PHI is treated as a security incident (HIPAA Security Rule, 45 C.F.R. § 164.304) and that security incidents are met with a security incident response.   HIPAA Security Rule, 45 C.F.R. § 164.308(a)(6).     The HIPAA security rule refers to several standard, guideline, or recommendation documents released by the National Institutes of Standards and Technology as methods to achieve components of HIPAA compliance.   Federal Register Vol. 68, No. 34, pp. 8346, 8350, 8352, and 8355.

26.     Plaintiff and the class he seeks to represent now face years of constant surveillance of their financial and medical records, monitoring, loss of rights, and potential medical problems.

### PLAINTIFF'S FACTUAL ALLEGATIONS

27.     Plaintiff, David Bazley, has health insurance with Anthem through his employment with U.S. Air, Inc., and is a current member and/or insured of Anthem.  Plaintiff did not receive notice of the breach from Anthem, but instead learned of it through the media.

28.     To purchase health insurance from Anthem, David Bazley was required to provide Anthem with his personal information in exchange for an agreement with Anthem to receive health insurance coverage and to protect his personal information in accordance with HIPAA and industry standards.

29.     Upon information and belief, Plaintiff's PHI and PII was compromised in and as a result of the Anthem data breach.  Plaintiff is harmed by having his financial and personal

information exposed and faces the imminent and impending threat of future harm from identity

theft by his personal information being sold and/or misused by criminals.

## CLASS ALLEGATIONS

30.    Plaintiff brings this action on behalf of himself and all others similarly situated

pursuant to Fed. R.C.P. 23.   Plaintiff seeks to represent a class (the "Class") described as

follows:

> All individuals and entities in the United States and its territories
> (i) who paid money to Anthem in exchange for health insurance
> and (ii) whose personal and confidential health information and/or
> personal identification information was compromised as a result of
> the Anthem data breach confirmed by Anthem on or about
> February 4, 2015.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding

over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents,

successors, predecessors, and any entity in which the Defendants or their parents have a

controlling interest and its current or former employees, officers and directors; (3) persons who

properly execute and file a timely request for exclusion from the Class; (4) persons whose claims

in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns

of any such excluded persons.

31.    **Numerosity**: The exact number of Class members is unknown to Plaintiff at this

time, but on information and belief, the Class is compromised of millions of individuals

throughout the country, making joinder of each individual member impracticable. Ultimately, the

members of the Class will be easily identified through Defendants' records.  Early media reports

suggest that 80,000,000 people are or could be effected.[5]

32.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members, and include, but are not limited to:

      a.    Whether Defendants took steps and measures to adequately safeguard Plaintiff's and the Class members' Sensitive Information;

      b.    Whether Defendants storing of Plaintiff's and the Class members' Sensitive Information in the manner alleged violated industry standards and/or HIPAA;

      c.    Whether implied or express contracts existed between Defendants, on the one hand, and Plaintiff and the members of the Class on the other;

      d.    Whether Defendants' conduct described herein constitutes a breach of their contracts with Plaintiff and the Class members; and

      e.    Whether Defendants should retain the monies paid by Plaintiff and other Class members to protect their Sensitive Information.

33.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

34.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

---

[5] *See* http://www.consumeraffairs.com/news/anthem-hackers-threaten-customer-records-dating-back-to-2004-021615.html?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+consumeraffairs%2FSXJd+%28ConsumerAffairs.Com+News+%26+Alerts%29

35.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

36.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Breach of Contract
### (On behalf of Plaintiff and the Class)

37.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38.     Plaintiff and the Class members' paid money to Anthem in exchange for its promise to provide health care insurance coverage.

39.     In addition to providing health care insurance coverage, a material part of Anthem's promise to provide coverage involved protecting Plaintiff's and the Class members' personal information.   *See* Exhibit "B" (letter of Joseph Swedish, President and CEO of Anthem).

40.     In its written agreements as well as its privacy notices, Anthem expressly promised Plaintiff and members of the Class that Anthem only discloses health information when required to do so by federal or state law or with their consent. Anthem further promised that it would protect their personal information.

41.     Anthem promised to comply with all HIPAA standards and to make sure that Plaintiff's and the Class members' personal information was protected. Anthem further promised to provide notice to Plaintiff and members of the Class describing Anthem's legal duties and privacy practices with respect to their personal information.

42.     The contracts required Anthem to safeguard Plaintiff's and the Class members' personal information to prevent its disclosure and/or unauthorized access.

43.     Plaintiff and the Class members fully performed their obligations under the contracts.

44.     Anthem did not adequately safeguard Plaintiff's and the Class members' protected personal information. Specifically, Anthem did not comply with its promise to comply

with HIPAA's guidelines or industry standards when it stored its members' personal information.

45.     The failure to meet these promises and obligations constitutes an express breach of contract. Put another way, Anthem breached the contracts with Plaintiff and the members of the Class by failing to implement sufficient security measures to protect Plaintiff's and the Class members' personal information as described herein.

46.     Anthem's failure to fulfill its data security and management promises resulted in Plaintiff and the Class members receiving services that were of less value than they paid for (*i.e.*, health care insurance coverage without adequate data security and management practices).

47.     Stated otherwise, because Plaintiff and the Class paid for privacy protections that they did not receive—even though such protections were a material part of their contracts with Anthem—Plaintiff and the Class did not receive the full benefit of their bargain.

48.     As a result of Anthem's breach, Plaintiff and the Class suffered damages in the amount of the difference between the price they paid for Anthem's services as promised and the actual diminished value of its health care services.

**COUNT II**
**Breach of Implied Contract**
**(in the alternative to Breach of Express Contract)**
**(On Behalf of Plaintiff and the Class)**

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.     In order to benefit from Anthem's services, Plaintiff and the Class disclosed (and were required to disclose) personal information to Anthem, including their names, addresses, telephone numbers, Social Security numbers, dates of birth, and extremely sensitive medical information.

51.     By providing that personal information, and upon Anthem's acceptance of such

information, Plaintiff and the Class, on the one hand, and Anthem, on the other hand, entered into implied contracts whereby Anthem was obligated to take reasonable steps to secure and safeguard that information.

52.     Under the implied contract, Anthem was further obligated to provide Plaintiff and the Class with prompt and sufficient notice of any and all unauthorized access and/or theft of their personal information.

53.     Without such implied contracts, Plaintiff and the Class would not have provided their personal information to Anthem.

54.     As described herein, Anthem did not take reasonable steps to safeguard Plaintiff's and the Class members' personal information.

55.     Because Anthem allowed unauthorized access to Plaintiff's and the Class members' personal information and failed to take reasonable steps to safeguard their personal information, Anthem breached its implied contracts with Plaintiff and the Class.

56.     The failure to meet these promises and obligations constitutes a breach of contract. In other words, Anthem breached the contracts by failing to implement sufficient security measures to protect Plaintiff's and the Class members' personal information as described herein.

57.     Anthem's failure to fulfill its data security and management promises resulted in Plaintiff and the Class receiving services that were of less value than they paid for (*i.e.*, the provision of health care insurance coverage without adequate data security and management practices).

58.     Stated otherwise, because Plaintiff and the Class paid for privacy protections that they did not receive—even though such protections were a material part of their contracts with

Anthem—Plaintiff and the Class did not receive the full benefit of their bargain.

59.      As a result of Anthem's breach, Plaintiff and the Class suffered damages in the amount of the difference between the price they paid for Anthem's services as promised and the actual diminished value of its health care services.

## COUNT III
### Restitution/Unjust Enrichment
### (in the alternative to Counts I and II)
### (On Behalf of Plaintiff and the Class)

60.      Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61.      If the Court finds Plaintiff's and the Class members' contracts with Anthem for protection of their personal information invalid, non-existent, or otherwise unenforceable, Plaintiff and the Class may be left without any adequate remedy at law.

62.      Plaintiff and members of the Class conferred a monetary benefit on Anthem in the form of fees paid for health care insurance coverage. Anthem appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class.

63.      The fees for health services that Plaintiff and the Class paid to Anthem were supposed to be used by Anthem, in part, to pay for the administrative costs of data management and security.

64.      Under principles of equity and good conscience, Anthem should not be permitted to retain the money belonging to Plaintiff and members of the Class, because Anthem failed to implement data management and security measures that Plaintiff and the Class paid for and are otherwise mandated by HIPAA and industry standards.

65.      Accordingly, as a result of Anthem's conduct, Plaintiff and the Class suffered damages in the amount of the difference between the price they paid for Anthem's services as promised and the actual diminished value of the health care services received.

## COUNT IV
### Violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (On Behalf of Plaintiff and the Class)

66.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

67.     This cause of action is brought pursuant to the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*, which provides protection for Pennsylvania consumers against unfair or deceptive acts or practices in the conduct of any trade or commerce as defined in 73 P.S. § 201-2(4)(i)- § 201-2(4)(xxi). *See* 73 P.S. § 201-3.

68.     Plaintiff and the Class are "persons" as defined by the UTPCPL.

69.     At all relevant times, Plaintiff and the Class purchased goods from Anthem for personal, family or household purposes as defined by the UTPCPL.

70.     At all relevant times, Plaintiff and the Class suffered an "ascertainable loss" as defined by the UTPCPL.

71.     At all relevant times, the transactions between Plaintiff, the Class and Anthem constituted "trade or commerce" as defined by the UTPCPL.

72.     At all relevant times, Anthem engaged in unfair and deceptive trade practices by representing that it appropriately safeguarded its current and former members personal identification information.  *See* Exhibit "B" (Letter of Joseph Swedish, President and CEO of Anthem).

73.     Anthem's conduct, therefore, violates Section 201-2(4) (xxi) of the UTPCPL, namely, "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

14

74.     Anthem's conduct also violates Sections 201-2(4) (v) and (vii) of the UTPCPL because in representing that it appropriately safeguarded its current and former member's personal identification information, Anthem also committed the following unlawful practices:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have [.]; and,

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another [.]

75.     Reliance is not a necessary element of the UTPCPL violations set forth herein because the deceit is the failure to safeguard the personal identification information of Plaintiff and the Class members and testimony of reliance is unnecessary to establish the "ascertainable loss" sustained by Plaintiff and the Class from the deceptive trade practices.

76.     Justifiable detrimental reliance also is presumed as a result of the materiality of the transactions at issue.

77.     By reason of the foregoing, Plaintiff and the Class have been harmed, entitling them to injunctive relief, actual damages, statutory damages, treble damages and costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff David Bazley, individually and on behalf of the Class, respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, and appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Anthem's actions, as described above, constitute (i) Breach

of Express Contract, (ii) Breach of Implied Contract (in the alternative to Breach of Express Contract), and (iii) Unjust Enrichment (in the alternative to Breach of Express Contract and Breach of Implied Contract);

C.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including: (i) an order prohibiting Anthem from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Anthem to protect all data collected through the course of its business in accordance with HIPAA and industry standards;

D.      Awarding damages to Plaintiff and the Class in an amount to be determined at trial;

E.      Awarding restitution to Plaintiff and the Class in an amount to be determined at trial;

F.      Awarding statutory and compensatory damages for each instance of unfair or deceptive conduct;

G.      Awarding treble damages for Defendants' unfair and deceptive conduct;

H.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

I.      Awarding Plaintiff and the Class pre and post-judgment interest to the maximum extent allowable by law; and

J.      Awarding such other and further legal or equitable relief as equity and justice may require.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

                              CAROSELLI BEACHLER McTIERNAN
                              & CONBOY, LLC

Dated: <u>February 18, 2015</u>        By:<u>/s/ William R. Caroselli</u>
                                 William R. Caroselli, Esquire
                                 20 Stanwix Street, 7th Floor
                                 Pittsburgh, PA 15222
                                 Telephone: (412) 391-9860
                                 Email: <u>wcaroselli@cbmclaw.com</u>

                                 David S. Senoff, Esquire*
                                 Richard C. DeFrancesco, Esquire*
                                 1845 Walnut Street, Fifteenth Floor
                                 Philadelphia, PA 19103
                                 Telephone: (215) 609-1350
                                 Email: dsenoff@cbmclaw.com

                                 *_Pro hac vice_ admission to be sought.